**Case No. 22-11322**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### BROWARD COUNTY SHERIFF'S OFFICE,

*Plaintiff-Appellant/Cross-Appellee,*

v.

### SCOTT THOMAS,

*Defendant-Appellee/Cross-Appellant.*

Appeal from the United States District Court
for the Southern District of Florida

Case No. 19-61324-Civ-Dimitrouleas

## **APPELLANT'S INITIAL BRIEF**

Carmen Rodriguez, Florida Bar No. 710385
Law Offices of Carmen Rodriguez, P.A.
15715 S. Dixie Highway, Suite 411
Palmetto Bay, Florida 33157
Telephone (305) 254-6101
Facsimile (305) 254-6048
Email: crpa@crlaborlawfirm.com
*Attorneys for Appellant/Cross-Appellee,
Broward County Sheriff*

## CERTIFICATE OF INTERESTED PERSONS

Appellant/Cross-Appellee, GREGORY TONY, in his official capacity as Sheriff of Broward County, Florida[1], by and through his undersigned counsel, and pursuant to Federal Rule of Appellate Procedure 26.1 and the Eleventh Circuit Court of Appeals Local Rules associated therewith, hereby certifies that the following persons have an interest in the outcome of this case:

1.    Breslow, Brandon K., Appellate counsel to Appellee/Cross-Appellant Scott Thomas;

2.    Judge, U.S. District Judge William Dimitrouleas, Southern District of Florida;

3.    Judge, U.S. District Court Magistrate Judge Lurana Snow, Southern District of Florida;

4.    Kynes, Markman & Felman, P.A., Appellate counsel to Appellee/Cross-Appellant Scott Thomas;

5.    Law Offices of Carmen Rodriguez, P.A., Appellate counsel to Appellant/Cross-Appellee;

6.    Markman, Stuart C., appellate counsel to Appellee/Cross-Appellant Scott Thomas;

7.    Norse, Kristin A., Appellate counsel to Appellee/Cross-Appellant Scott Thomas;

---

[1]There is no such entity as Broward County Sheriff's Office. The Broward County Sheriff's Office is synonymous with and duplicative of the **Sheriff of Broward County** in his official capacity as a constitutional officer in the State of Florida.

8.  Obeidy, Andrew, Esq., trial counsel to Appellee/Cross-Appellant Scott Thomas;

9.  Obeidy & Associates, P.A., trial counsel to Appellee/Cross-Appellant Scott Thomas;

10. Rodriguez, Carmen, Esq., counsel to Appellant/Cross-Appellee;

11. Thomas, Scott, Appellee/Cross-Appellant; and

12. Tony, Gregory, in his official capacity as Sheriff of Broward County, Florida, Appellant/Cross-Appellee

## STATEMENT REGARDING ORAL ARGUMENT

BSO respectfully submits that oral argument would assist the Court in its consideration of the record on appeal. During the trial of the matter, the lower court became concerned about the evidence sought to be presented by Plaintiff and its relevance to the legal issues properly before the Court. The trial court was compelled to conclude: "I think it's a very weak case", but nonetheless denied BSO's Rule 50(a) Motion at trial and subsequently denied BSO's Rule 50(b) Motion. Since *Coffman v. Chugach Support Servs., Inc.,* 411 F.3d 1231 (11th Cir. 2005), there have been few cases in the jurisdiction on the issue of Plaintiff's *prima facie* case of discrimination under the Uniformed Services Employment and Reemployment Rights Act ("USERRA") to establish that military status was a "motivating factor" and Defendant's rebuttal thereto, which warrants consideration of these issues by the Court.

i

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement........ C-1

Statement Regarding Oral Argument................................... i

Table of Contents ..................................................... ii

Table of Citations .................................................... iv

Jurisdictional Statement ............................................. vii

Statement of the Issues ............................................... 1

Statement of the Case ................................................ 2

    A.    Nature of the Case ........................................ 2

    B.    Course of Proceedings and Disposition in the lower Court ........ 2

    C.    Statement of the Facts ..................................... 3

    D.    Standard of Review ....................................... 13

Summary of the Argument ........................................... 14

Argument........................................................... 19

    I.    BSO is entitled to judgment as a matter of law as Plaintiff
        failed to present sufficient evidence as to his *prima facie* case
        that his military status was a "motivating factor" in BSO's
        decision to terminate him during his probationary period.
        Plaintiff further failed to present evidence to rebut BSO's
        legitimate non-discriminatory reason which, standing alone,
        warranted separating Plaintiff during probation. Thus,
        Plaintiff's claim for discrimination under the Uniformed
        Services Employment and Reemployment Rights Act, 38

U.S.C. §4301, et seq. ("USERRA") failed as a matter of law and did not warrant submission to the jury. . . . . . . . . . . . . . . . . . . . 19

II.    BSO is entitled to judgment as a matter of law as Plaintiff failed to present sufficient evidence to warrant submission to the jury as to his claim for retaliation under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §4301, et seq. ("USERRA"). . . . . . . . . . . . . . . . . . . . . . . . . . . 31

III.   Alternatively, BSO was entitled to a new trial as the verdict is clearly against the great weight of the evidence . . . . . . . . . . . . . . . 39

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

# TABLE OF CITATIONS

**Cases**                                                                     **Page No.**

*Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . 19

*Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253 (11th Cir. 2010). . . . . . . . 30

*Ard v. Southwest Forest Industries,* 849 F.2d 517 (11th Cir. 1988) . . . . . . . . 39, 40

*Aronowitz v. Health-Chem Corp.,* 513 F.3d 1229 (11th Cir. 2008) . . . . . . . . . . . 39

*Cadle v. GEICO Gen. Ins. Co.,* 838 F.3d 1113 (11th Cir. 2016). . . . . . . . . . . . . . 19

*Chapman v. AI Transp.*, 229 F.3d 1012 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . 30

*Coffman v. Chugach Support Servs., Inc.,*
    411 F.3d 1231 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . 16, 20, 21, 24, 27, 35

*Corbin v. Southwest Airlines, Inc.,* 2018 U.S. Dist. LEXIS 171672 at*43
    (S.D. Tex. Oct. 4, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*D'Angelo v. Sch. Bd.,* 497 F.3d 1203 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 13

*Dominguez v. Miami-Dade Cnty.,* 416 F. App'x 884 (11th Cir. 2011). . . . . 24, 34

*Drago v. Jenne*, 453 F.3d 1301 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Duncan v. Alabama*, 734 F. App'x 637 (11th Cir. 2018) . . . . . . . . . . . . . . . . . . . 30

*Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299 (4th Cir. 2006) . . . . 33, 34

*Hanford v. GEO Grp., Inc.,* 345 F. App'x 399 (11th Cir. 2009). . . . . . . . . . . . . . 32

*Hewitt v. B.F. Goodrich Co.,* 732 F.2d 1554, 1556 (11th Cir. 1984) . . . . . . . . . . 39

## TABLE OF CITATIONS (cont.)

**Cases**                                                          **Page No.**

*Holt v. Hydraulic Hose of Hillsborough, LLC*, No. 8:18-CV-2082-T-33CPT,
 2018 WL 7457682, at \*2 (M.D. Fla. Nov. 9, 2018) . . . . . . . . . . . . . . . . . . 31

*Howard v. Walgreen Co.*, 605 F.3d 1239 (11th Cir 2010) . . . . . . . . . . . . 13, 19, 32

*Hughes v. Eleventh Judicial Circuit of Fla.*, 274 F. Supp. 1334 (S.D. Fla.
 2003)(citing 49 U.S.C. §44701(a)(5)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Ins. Co. of N. Am. v. Valente*, 933 F.2d 921 (11th Cir. 1991) . . . . . . . . . . . . . . . 39

*Jones* v. *Dep't of Health & Human Servs.*, 703 F. App'x 977 (Fed. Cir. 2017) . . 31

*Landolfi v. City of Melbourne*, 515 F. App'x 832 (11th Cir. 2013) . . . . . . . . 20, 37

*Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1246 (11th Cir. 1998) . . . . . . . 32

*Loperena v. Scott,* 356 F. App'x 240 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . 24, 28

*Murphy v. City of Aventura*, 383 F. App'x 915 (11th Cir. 2010) . . . . . . . . . . . . . 25

*Robbins v. Koger Props, Inc.*, 116 F.3d 1441 (11th Cir. 1997). . . . . . . . . . . . . . . 19

*Ruckh v. Salus Rehab., LLC,* 963 F.3d 1089 (11th Cir. 2020) . . . . . . . . . 13, 19, 39

*Sheehan v. Dep't of the Navy*, 240 F.3d 1009 (Fed. Cir. 2001). . . . . . . . . . . . . . . 24

*Staub v. Proctor Hosp.,* 562 U.S. 411, 417;
 131 S. Ct. 1186, 1191 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 25, 26, 35

*Stimpson v. Tuscaloosa*, 186 F.3d 1328 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . 29

# TABLE OF CITATIONS (cont.)

**Cases**                                                    **Page No.**

*Ward v. UPS,* 580 F. App'x 735 (11th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Watts v. Great Atlantic and Pacific Tea Co., Inc.,*
    842 F.2d 307 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**Regulations**

14 C.F.R. §135.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

20 C.F.R. 1002.248 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Uniformed Services Employment and Reemployment Rights Act of 1994
("USERRA"), as amended, 38 U.S.C. §§ 4301-4335
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 17, 19, 20, 21, 28, 31, 32, 33, 34, 35, 36

**Rules**

Fed. R. Civ. P., Rule 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

vi

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal under 28 U.S.C. §1291, as it is an appeal from a final decision of the District Court entered on March 25, 2022, denying Defendant's Renewed Motion for Judgment as a Matter of Law or, Alternatively, for New Trial on all claims. This appeal was timely, as BSO's Notice of Appeal was filed on April 22, 2022, within 30 days of the District Court's denial of Defendant's Renewed Motion for Judgment as a Matter of Law or, Alternatively, for New Trial. Fed. R. App. P. 4(a)(4)(A).

## STATEMENT OF THE ISSUES

1.      BSO is entitled to judgment as a matter of law as Plaintiff failed to present sufficient evidence as to his *prima facie* case that his military status was a "motivating factor" in BSO's decision to terminate him during his probationary period. Plaintiff further failed to present evidence to rebut BSO's legitimate non-discriminatory reason which, standing alone, warranted separating Plaintiff during probation. Thus, Plaintiff's claim for discrimination under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §4301, et seq. ("USERRA") failed as a matter of law and did not warrant submission to the jury.

2.      BSO is entitled to judgment as a matter of law as Plaintiff failed to present sufficient evidence to warrant submission to the jury as to his claim for retaliation under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §4301, et seq. ("USERRA").

3.      In the alternative, BSO is entitled to a new trial as the verdict is clearly against the great weight of the evidence.

1

## **STATEMENT OF THE CASE**

### **A.    Nature of the Case**

Thomas was hired by BSO in 2018 as an Air Rescue Pilot, subject to a 12 month probationary period. Thomas was terminated during his probationary period for unverifiable flight experience and undisputed discrepancies between his Resume, Flight Experience Form and the unofficial backup flight logbook he provided to BSO. Thereafter, on May 28, 2019, Thomas filed his underlying lawsuit against BSO alleging discrimination and retaliation under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §4301, et seq. ("USERRA") based on his prior military service, which had ended in 2011.

### **B.    Course of Proceedings and Disposition in the lower Court**

On May 28, 2019, Thomas filed a two count Complaint alleging discrimination and retaliation under the USERRA. He later filed an Amended Complaint which was again amended pursuant to an Order Granting Defendant's Motion to Dismiss. Plaintiff filed his Second Amended Complaint on August 27, 2019, alleging one count of discrimination and one count of retaliation under USERRA relating to his termination from BSO in January 2019, during his 12 month probationary period. Defendant filed a Motion for Summary Judgment which was denied on February 11, 2021. The matter proceeded to trial on January 24-27, 2022. Defendant made a

2

timely Motion for Judgment as a Matter of Law on January 26, 2022. In ruling on the Motion, the Court noted "This is a very weak case." The Court nonetheless denied the Motion. DE 106, p. 198. On January 27, 2022, the jury returned a verdict for Plaintiff as to discrimination and retaliation and awarded Plaintiff the amount of $240,000 as to the discrimination claim and as to retaliation, Plaintiff was awarded zero ($0). Defendant filed a timely Rule 50(b) Motion on February 21, 2022, which was denied. This appeal followed and Plaintiff filed a cross-appeal.

## C. **Statement of the Facts**

Plaintiff served in the Army from May 2004 until his discharge in December 2011. DE 53, p. 3; DE 108, p. 120; DE 98-2, p. 1. Since December 2011, Plaintiff had not had any active military service or worked in any military positions. Thus, when he applied for Air Rescue Helicopter Pilot with BSO in 2018, it had been seven years since Plaintiff had served in the military. DE 53, p. 3; DE 108, p. 171. From June 2012 to April 2016, Plaintiff was a private contract pilot. DE 98-2, p. 1. This was the last time that he had worked as a pilot before applying to BSO in 2018.

In 2018, BSO was starting an Air Rescue program in the Emergency Medical Services ("EMS") Division of its Fire Rescue Department that would operate under Part 135 regulations. DE 53, p. 3; DE 106, p. 87, p. 131. Part 135 regulations apply to air carriers that charge a patient or person for transportation. DE 53, p. 3; DE 107,

3

p. 128, p. 196. Part 135 regulations are not applicable in the military. Plaintiff did not obtain any Part 135 experience either in the military or at any time after his discharge. DE 53, p. 3-4; DE 98-2, p. 1; DE 107, p. 43. In April 2018, BSO invited applications for the Air Rescue Helicopter Pilot position. Minimum requirements included possession of a Rotorcraft-Helicopter Commercial and Instrument rated license, at least 1,000 rotorcraft-helicopter flight hours as pilot-in-command ("PIC"), 250 hours of rotorcraft-helicopter night flight time and 50 hours rotorcraft-helicopter flight time within the last year. Medevac helicopter experience was preferred. The posting specified that pilots must comply with FAA regulations and maintain all flight data such as aircraft logs. DE 98-1, p. 1; DE 53, p. 4. The Air Rescue Helicopter Pilot position would involve Part 135 work. DE 107, p. 194. Pilots with Part 135 experience were preferred. DE 107, p. 196-197.

In April 2018, Plaintiff applied for the Air Rescue Helicopter Pilot position at BSO. DE 53, p. 4. He submitted a resume. DE 98-2, p. 1; DE 108, p. 144. Under "Aircraft Hours," Plaintiff put that he had 2,080 total, 1,500 PIC, 950 combat and 530 Night Vision Goggle hours. DE 98-2, p. 1; DE 107, p. 35; DE 108, p. 196. Plaintiff did not have any Part 135 or Medevac helicopter experience. DE 98-2, p. 1; DE 108, p. 167. Plaintiff had not worked as a Pilot since April 2016. DE 53, p. 4; DE 98.2, p. 1. When he applied for Air Rescue Helicopter Pilot, Plaintiff did not have 50 flight

4

hours in the past year as required to qualify. DE 98-1, p. 2; DE 98-2, p. 1. Plaintiff testified he later obtained the flight hours required to qualify at a flight school in Pompano Beach, Florida. DE 108, p. 140; DE 107, p. 161. Plaintiff kept his official logbook records of his flight hours in a storage unit in Virginia (hereinafter "official logbook"). DE 108, p. 169. Plaintiff's official logbook included his logbook with the additional flight experience that he obtained to qualify for the Air Rescue Helicopter position at BSO (which was the 50 total flight hours he achieved in Florida after he applied, including an endorsement for flying a R22 helicopter); logbook from when he received his single-engine rating with proper endorsements; official Army record of his flight time during military service; and logbook from his time working as a civilian with the FBI with proper endorsements. DE 107, p. 12-13, 17. Plaintiff's official logbook was the correct record for official purposes, had instructor endorsements and did not have discrepancies. DE 108, p. 127-128, p. 221. Plaintiff never provided his official logbook to BSO for inspection. DE 53, p. 4-5; DE 107, p. 13; DE 108, p. 169.

Using an application he downloaded on his cell phone, Plaintiff kept a personal record of his flight hours that he called a "backup" logbook (hereinafter "backup logbook"). DE 108, p. 127; DE 107, p. 9. Plaintiff's backup logbook was not an official record and did not have any instructor endorsements. DE 108, p. 128, p. 219.

5

On August 2, 2018, Plaintiff was interviewed for the Air Rescue Helicopter Pilot position at BSO by Chief Tammy Nugent and BSO Department of Law Enforcement pilot Brian Miller. DE 53, p. 4; DE 108, p. 151. Plaintiff did not bring his official logbook to his interview. DE 53, p. 4. Plaintiff showed Miller his backup logbook on his cell phone and told Miller and Nugent that his official logbook was in storage in Virginia. Miller told Thomas that he would have to bring in his official logbook for inspection as soon as possible. DE 106, p. 142. Miller told Plaintiff that BSO had a requirement for cross-country flight time and that he needed to see a record in his logbook showing that Plaintiff had at least the minimum hour requirement for cross-country time. DE 108, p. 161. Plaintiff had never logged any type of cross-country flight "while in the military or even with the FBI." DE 108, p. 162. Plaintiff took a test at his interview. DE 108, p. 154. According to his scored test, Plaintiff got most questions wrong. DE 108, p. 155. BSO knew Plaintiff had military pilot experience before hiring him. DE 53, p. 3; DE 98-2, p. 1.

On November 26, 2018, Plaintiff was hired at BSO as a probationary Air Rescue Helicopter Pilot. DE 53, p. 4. Newly hired Air Rescue Helicopter Pilots are subject to a twelve month probationary employment period. DE 53, p. 4; DE 96-4, p. 1. During the probationary period, a pilot may be terminated at any time for not meeting BSO standards or for any other non-discriminatory reason. DE 53, p. 4.

6

Plaintiff's job offer and employment as an Air Rescue Helicopter Pilot were contingent upon his successful completion of the training program and review of records of his flight experience. DE 107, p. 199-200; DE 98-1, p. 1-2. At the same time Plaintiff was hired, BSO hired Timothy Larsen, Jonathan Weiers, Brian McDonald, and Danielle Fuller as Air Rescue Helicopter Pilots. DE 53, p. 4; DE 108, p. 173. Plaintiff, Larsen, Weiers and McDonald were all military pilots. DE 53, p. 3-4; DE 98-2, p. 1; DE 108, p. 173. Tammy Nugent ("Chief Nugent") was Chief of the EMS Division and would be overseeing operations of the new Air Rescue program. DE 53, p. 4; DE 106, p. 117. Jesse Madrigal, the Director of Operations who oversees pilots in BSO's Law Enforcement Department, was serving as Director of Operations of the new Air Rescue program. DE 106, p. 8, p. 119. Madrigal is a military pilot and has been actively deployed during his employment with BSO. DE 106, p. 120-121. The Director of Operations oversees the entire Air Rescue program; he reported to Chief Nugent. DE 53, p. 4. Director of Operations has overall authority and responsibility for Aviation employees and flight standards/training and for supervising flight crew and assuring all flight operations are conducted safely and in compliance with FAA regulations. DE 53, p. 4-5.

The new Air Rescue Pilots began their probationary training taking instruction towards an Emergency Medical Technician ("EMT") certification, which would be

7

required for the position. As the program moved toward obtaining FAA approval as a Part 135 carrier, Fuller was selected to be Chief Pilot because she had experience and qualifications as a Part 135 air ambulance helicopter pilot. Chief Pilot oversees training in Air Rescue and generally reports to Director of Operations. DE 53, p. 5. Chief Pilot is responsible for ensuring pilots conform to FAA regulations, maintain qualifications and receive proficiency checks as required by FAA and BSO and preparing and maintaining pilot files. DE 53, p. 5; DE 107, p. 210. Fuller was responsible for compiling and reviewing the records of all pilots in the Air Rescue program. DE 107, p. 133-134; DE 96-1, p. 1.

On January 2, 2019, Fuller asked all pilots to fill out a Pilot Experience Form. DE 107, p. 165. Plaintiff completed his Pilot Experience Form using his backup logbook and signed the form. He testified that he was aware that his backup logbook contained discrepancies at that time. DE 53, p. 5; DE 108, p. 128. The flight hours that Plaintiff listed on his Pilot Experience Form were different than those listed on his Resume. For example, Plaintiff indicated that he had less PIC hours on his Pilot Experience Form than he had represented on his resume. DE 53, p. 5; DE 98-2, p. 1; DE 98-3, p. 1. On January 10, 2019, Fuller asked all probationary pilots via group text message to bring their logbooks in to her for review. DE 107, p. 20-21; DE 108, p. 187. Plaintiff gave Fuller his backup logbook and said, once again, that his official

8

logbook was still in a storage unit in Virginia. All other probationary pilots (all military) complied with Fuller's request and brought their logbooks in for review as directed. Only Plaintiff failed to provide his official logbook as directed. DE 107, p. 148-149.

In conducting her review of Pilots' records, Fuller reviewed what she had available for Plaintiff- his Resume, the Pilot Experience Form he completed and his unofficial backup logbook. These records evidenced discrepancies in his flight experience. DE 53, p. 5; DE 107, p. 222. Fuller also reviewed the flight records of the other Air Rescue pilots (all former military pilots). Fuller found no discrepancies or errors in the records provided by all other the (former military) probationary pilots. Fuller only found discrepancies in Plaintiff's flights hours and he had failed to provide verification of his flight hours with his official logbooks. DE 107, p. 221. The only documentation that Plaintiff had provided to BSO with his flight hours were his Resume, backup logbook and Pilot Experience Form. DE 53, p. 5; DE 98-2, p. 1; DE 98-3, p. 1.

On the afternoon of January 10, 2019, Fuller made a recommendation to Fire Rescue Chiefs Timothy Keefe, Joseph Fernandez and Tammy Nugent to release Plaintiff from probationary employment as an Air Rescue Helicopter Pilot trainee because her review of Plaintiff's records revealed unverifiable flight experience with

9

major discrepancies between his job application, backup logbook and Pilot Experience Form. DE 53, p. 5; DE 106, p. 15; DE 107, p. 225-226. Chief Nugent did not simply rely on Fuller's recommendation. Instead, Nugent met with Madrigal and Fuller and reviewed with them the records they had for Plaintiff and the discrepancies in Plaintiff's records. DE 106, p. 133-134, p. 147; DE 107, p. 155-156, p. 168-169. Based on the discrepancies in documentation of Plaintiff's flight experience and her review of same with Madrigal and Fuller, Chief Nugent determined that Plaintiff did not meet probationary standards and would be given the option to resign or be terminated from probationary employment. DE 106, p. 157; DE 108, p. 206.

On January 28, 2019, Chief Nugent, Madrigal and Fuller met with Plaintiff in a conference room at the BSO hangar. DE 53, p. 5; DE 106, p. 157; DE 108, p. 206. Chief Nugent told Plaintiff that he was not meeting probationary standards and the reason was discrepancies in his flight experience. DE 106, p. 157; DE 108, p. 206. Plaintiff was given the option to resign or be terminated from employment. DE 106, p. 157; DE 108, p. 206. On January 28, 2019, Plaintiff resigned from BSO employment. DE 98-7, p. 1; DE 106, p. 35, p. 136; DE 108, p. 211. On the same day, he signed a BSO Separation Form indicating he resigned for personal reasons. DE 98-7, p. 1. He received payment from BSO for his all his accrued annual leave balances as indicated on his signed Separation Form. DE 98-7, p. 1.

10

Plaintiff is not aware of any non-military pilot at BSO who had discrepancies or errors in their logbook, was given an opportunity to correct their logbook, or was treated differently than him regarding their logbook. DE 106, p. 56. Plaintiff never provided his official logbook to anyone at BSO. DE 53, p.4-5; DE 106, p. 94; DE 107, p. 148-149; DE 108, p. 216.

Plaintiff alleged that Fuller once called him "stupid" or "dumb" because he failed an EMT test. DE 108, p.180. He alleged that she had also called him "stupid" or "dumb" for completing paperwork incorrectly on a hospital call. DE 108, p. 178-179. Plaintiff testified that Fuller made statements about the pilots in general regarding the lack of Part 135 experience and made comments that the military would not recognize her experience as a civilian pilot. Fuller testified that she was frustrated because the pilots, and Plaintiff in particular, wanted to know the full pilot training schedule and timeline and Fuller and Nugent were still working through the timeline, as the Air Rescue Division was a new program and BSO had to go through FAA procedures. Plaintiff was insistent on his suggestions, but Fuller explained to him that BSO had to work under Part 135 and those Part 135 regulations were different than what he might have been use to when he flew for the military. DE 107, p. 168.

Jason Smith was an instructor of an EMT class at Barry University and conducted the EMT training for the probationary pilots. Chief Nugent wanted the

11

pilots to be certified as first responders, and so they were first all to undergo Emergency Medical Technician certification prior to commencement of the pilot certification process for the Air Rescue division. Smith did not report to Chief Nugent and was not in her chain of command. DE 106, p. 129. Plaintiff spoke with Smith on January 17, 2019 about failing an EMT test and in that discussion said that Fuller was treating the pilots with disrespect. DE 108, p. 201. Smith understood Plaintiff to be complaining about Fuller failing to keep the pilots informed and not communicating the training schedule. Smith never told Chief Nugent that Plaintiff made a complaint of discrimination against Fuller. DE 105, p. 12; DE 106, p. 129. On January 18, 2019, Chief Nugent met with Plaintiff, Larsen and Weiers. DE 108, p. 202-203. Plaintiff told Chief Nugent that Fuller made comments about the military and of the heated conversation between him and Fuller two days before at the hospital call. DE 108, p. 204. He testified that he spoke up because he felt Fuller would be subjective in the future, but was unaware of any write ups or actions against him at that point. DE 108, p. 202, p. 205. Plaintiff did not tell Chief Nugent of his January 17 meeting with Smith. DE 108, p. 204. Plaintiff does not claim that anyone at BSO other than Fuller made any statements to him that he alleges were discriminatory based on his military service. DE 107, p. 40.

12

## D. Standard of Review

A district court's denial of a motion for judgment as a matter of law pursuant to Rule 50(b) is subject to de novo review. *Howard v. Walgreen Co.,* 605 F.3d 1239 (11th Cir 2010); *D'Angelo v. Sch. Bd.*, 497 F.3d 1203, 1208 (11th Cir. 2007). The denial of a motion for new trial pursuant to Rule 59 is reviewed under the abuse of discretion standard. *Ruckh v. Salus Rehab., LLC,* 963 F.3d 1089 (11th Cir. 2020).

13

## **SUMMARY OF THE ARGUMENT**

Plaintiff failed to establish that his military service, seven (7) years prior to his employment with BSO, was a motivating factor for his separation. Plaintiff failed to establish any factor from which discriminatory motivation could be inferred. It is undisputed that BSO had knowledge of Plaintiff's prior military service and pilot experience before he was hired on a probationary basis as an Air Rescue Helicopter Pilot. Four of the six pilots hired at the same time as Plaintiff for the newly-formed Air Rescue Division of BSO all had military service as military pilots.

It is undisputed that all the pilots, including Plaintiff, were directed to bring in their official flight logbooks for inspection pursuant to FAA requirements and the job posting. All other (military) pilots complied; only Plaintiff failed to comply. Plaintiff's flight experience could not be verified because he alone failed to present his official logbook for review. The Chief Pilot, Fuller, reviewed the only documentation of his flight experience that Plaintiff had provided BSO - this was his Resume, a Pilot Experience Form that Plaintiff completed for BSO and an unofficial backup logbook that Plaintiff maintained via a phone app on his cell phone. At trial, Plaintiff did not dispute that his personal backup logbook had discrepancies and errors and that there were discrepancies in total flight hours and experience between his personal unofficial logbook, his Pilot Experience Form and his Resume. Chief

14

Pilot Fuller was also responsible to review the official logbook provided by all other probationary pilots; all of whom were prior military.[2]  Fuller found no errors or discrepancies in the flight experience records of any of the other military pilots and found their records compliant.

Based on the discrepancies and errors found as to Plaintiff, on January 10, 2019, Fuller issued a memorandum to Chief Nugent and Fire Rescue Command recommending that Plaintiff, and only Plaintiff, be separated from employment during his probationary period for unverified flight experience and discrepancies in his flight records. Thus, Plaintiff failed to establish discriminatory motivation through either temporal proximity of his military service, inconsistencies in the reasons proffered by BSO for his separation, or disparate treatment amongst employees where all pilots were military pilots and only Plaintiff failed probation for undisputed discrepancies in the flight records he provided to BSO and failure to verify his flight experience with his official logbook.

---

[2]At the time of hire, four of the six pilots hired as Air Rescue, had military experience. One of the non-military pilots failed to report early on and was separated. The only other non-military pilot was Danielle Fuller, who was selected to serve as Chief Pilot because she alone had prior Part 135 experience which was preferred for the position, as more fully explained herein. Thus, when Fuller was selected as Chief Pilot, the remaining four pilots were all prior military pilots including Plaintiff.

15

The evidence offered by Plaintiff to attempt to establish discriminatory motivation by alleging that Danielle Fuller made disparaging comments to him which were based on his military status was too weak and attenuated to establish a sufficient evidentiary basis for a reasonable jury to find in his favor. The statements that Plaintiff attributed to Fuller failed to constitute sufficient evidence of military bias; thus, Plaintiff failed to establish discriminatory motivation, through any of the *Coffman* factors. *Coffman v. Chugach Support Servs., Inc.,* 411 F.3d 1231, 1238 (11th Cir. 2005).

Moreover, Plaintiff cannot establish that Fuller was the final decision maker as to his termination of employment or that the final decision maker, Chief Tammy Nugent merely rubber stamped Fuller's recommendation under a "cat's paw" theory of liability to BSO, where it was undisputed that Tammy Nugent met jointly with military pilot and Director of Operations Jesse Madrigal and Fuller to review the documents that were the basis for Fuller's recommendation. Nugent reviewed with Fuller and Madrigal each of the discrepancies in the electronic logbook, Resume and Pilot Experience Form to ensure that the decision was justified and that Madrigal (a military pilot) also concurred with the findings. Thus, the undisputed testimony is that Nugent reviewed the documents themselves that formed the basis of the recommendation to ensure independently that the basis for the separation of Plaintiff

16

was justified and substantiated and that she had consensus from Director Madrigal (military pilot) as a subject matter pilot expert. In fact, the decision was entirely justified, as the basis for recommendation was undisputed to be true and Plaintiff was unable to present any evidence to rebut it. Plaintiff in fact presented "no verifiable flight experience" as Plaintiff never provided his official logbooks he had stored in Virginia with endorsements and signatures to verify his flight experience; and, there were in fact discrepancies between his Resume, personal backup logbook and his Pilot Experience Form, as Plaintiff acknowledged errors and discrepancies at trial in these documents.

Plaintiff's USERRA retaliation claim also fails as a matter of law. Plaintiff alleges that he spoke with Smith on January 17, 2019, and then to Nugent. Plaintiff's complaints do not constitute complaints of military discrimination. Plaintiff was not aware of any write up or adverse recommendation against him by Fuller at that time. Thus, he did not complain about being denied employment or any other adverse job action protected under USERRA. As such, Plaintiff failed to present sufficient evidence that he engaged in a protected activity in the first instance and he therefore failed to meet his initial burden on his retaliation claim.

Assuming that Plaintiff engaged in protected activity on January 17 to Smith or thereafter to Nugent, Fuller found that Plaintiff had unverified flight experience

17

and discrepancies in the flight experience he submitted to BSO and made a written recommendation dated January 10, 2019, to Fire Rescue Command for his release from probationary employment. Therefore, Plaintiff's January 17th discussion with Smith and subsequent conversation with Nugent, even if they could constitute protected activity, which they do not, are insufficient to support his retaliation claim where the actions leading to the challenged employment decision began before he made his alleged complaint.

Thus, as specifically acknowledged by the trial court, Plaintiff's evidence was very weak and attenuated. The trial court erred in denying Defendant's Renewed Motion for Judgment as a Matter of Law or, Alternatively, for New Trial, where the verdict was against the clear weight of the undisputed evidence. Alternatively, the verdict resulted in a miscarriage of justice warranting a new trial.

## ARGUMENT

**I.      BSO is entitled to judgment as a matter of law as Plaintiff
failed to present sufficient evidence as to his *prima facie* case
that his military status was a "motivating factor" in BSO's
decision to terminate him during his probationary period.
Plaintiff further failed to present evidence to rebut BSO's
legitimate non-discriminatory reason which, standing alone,
warranted separating Plaintiff during probation. Thus,
Plaintiff's claim for discrimination under the Uniformed
Services Employment and Reemployment Rights Act, 38
U.S.C. §4301, et seq. ("USERRA") failed as a matter of law
and did not warrant submission to the jury.**

Judgment as a matter of law for a defendant is appropriate, "when there is

insufficient evidence to prove an element of the claim, which means that no jury

reasonably could have reached a verdict for the plaintiff on that claim." *Ruckh v.*

*Salus Rehab.,* LLC, 963 F.3d 1089, 1099 (11th Cir. 2020) (citing *Cadle*, 838 F.3d at

1121). Defendant is entitled to judgment when there is no legal basis upon which the

jury could have found for the Plaintiff. *Howard v. Walgreens Co.,* 605 F.3d 1239

(11th Cir. 2010). "A mere scintilla of evidence is not sufficient to support a jury

verdict." *Robbins v. Koger Props, Inc.,* 116 F.3d 1441 (11th Cir. 1997). It is well

established that "the non-movant must put forth more than a mere scintilla of

evidence suggesting that reasonable minds could reach differing verdicts." *Abel v.*

*Dubberly,* 210 F.3d 1334, 1337 (11th Cir. 2000). Therefore, the granting of a Rule

19

50 motion is proper when, as here, the evidence is so weighted in favor of one side that Defendant is entitled to judgment.

In Count I, Plaintiff alleges that Defendant discriminated against him by terminating his employment in violation of USERRA, 38 U.S.C. § 4311(a), which makes it unlawful for an employer to discriminate against an employee based on military service. For an employee to make a *prima facie* case of USERRA discrimination, he must establish facts to show that his protected status was a "motivating factor" in the employment decision at issue. *Coffman v. Chugach Support Servs., Inc.,* 411 F.3d 1231, 1238 (11th Cir. 2005).

If the Plaintiff satisfies his *prima facie* case showing that his military status was a motivating factor in the decision, the burden then shifts to the employer to establish that legitimate, non-discriminatory reasons, standing alone, resulted in the termination of Plaintiff's employment. Plaintiff can only prevail if he then establishes that the proffered reason was a pretext for discrimination. *Staub v. Proctor Hosp.*, 562 U.S. 411, 417; 131 S. Ct. 1186, 1191 (2011) ("The statute is very similar to Title VII . . . ."); *Landolfi v. City of Melbourne*, 515 F. App'x 832 (11th Cir. 2013).

Under *Coffman*, military status is a motivating factor if the defendant took it into account or considered it in its employment decision. The Court held that discriminatory motivation under the USERRA can be inferred from the following:

20

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Coffman,* 411 F.3d at 1238.

Here, Plaintiff has failed to establish any factor from which discriminatory motivation could be inferred and, thus, Plaintiff failed to establish at trial that his former military status was a motivating factor in BSO's decision to separate his employment during his probation status. The undisputed record demonstrates that Plaintiff failed to meet his burden of showing a *prima facie* case of USERRA discrimination.

Plaintiff cannot base the inference of military discrimination on proximity in time between Plaintiff's former military service and his separation from BSO. Plaintiff was discharged from the military in 2011 and has not had any active military service for the intervening seven years when BSO hired him as a probationary Air Rescue Helicopter Pilot in November 2018. DE 108, p. 171. It is undisputed that BSO was aware of Plaintiff's military service and pilot experience before it hired him as a probationary Air Rescue Helicopter Pilot in November 2018. DE 98-2. The time period of over seven years between Plaintiff's last military service and separation

21

from BSO negate any inference that his former military service was a motivating factor in any decision.

Likewise, Plaintiff cannot base the inference of military discrimination on disparate treatment. Four of the six pilots hired for the Air Rescue Division at the same time as Plaintiff were prior military pilots. BSO hired Plaintiff, Timothy Larsen, Jonathan Weiers and Brian McDonald as Air Rescue Helicopter Pilots at the same time and they were all military pilots with military experience. DE 53, p. 4; DE 108, p. 119-120, 173. After Danielle Fuller became Chief Pilot, all four of the Air Rescue Helicopter Pilots in Plaintiff's training class (including Plaintiff) were pilots with military experience. Moreover, Plaintiff was unable to identify any nonmilitary pilot employed at BSO who had discrepancies or errors in their logbook and was treated any differently than himself with respect to their logbook.

Plaintiff likewise cannot base the required inference he must raise on inconsistencies in the proffered reason for Defendant's decision to separate him during his probationary period. BSO provided a consistent explanation for the decision - Plaintiff had unverified flight experience and discrepancies between his Pilot Experience Form, Resume, and personal backup logbook. DE 53, p.4-5; DE 106, p. 133-147; DE 96-2; DE 96-3; DE 98-2; DE 98-3. It is undisputed that all the pilots, including Plaintiff, were asked to bring in their official logbooks for inspection

22

pursuant to FAA requirements and the job posting. DE 98-1. While Plaintiff disputes that during his interview with Brian Miller and Tammy Nugent he was told to bring in his logbook, Plaintiff does not dispute that on January 10th Danielle Fuller sent out a group text to all pilots directing them to bring in their logbooks. DE 108, p. 187; DE 107, p. 20. The undisputed testimony is that all of the other pilots complied. Only Plaintiff did not comply and he told Danielle Fuller (just as he stated to Brian Miller previously) that his official logbook was (still) in storage in Virginia. DE 107, p. 148-149. Thus, the undisputed evidence is that the only pilot that failed to comply with the directive to bring his official logbook was Plaintiff and that the three other military pilots complied with the directive to have their logbooks reviewed.

Having no official logbooks to review for Plaintiff, Plaintiff's flight experience could not be verified. Fuller proceeded to review what she had for him - his personal backup logbook, Resume and Pilot Experience Form - which was the only documentation he had provided to support his flight hours' experience. DE 53, p. 5; DE 107, p. 9, 150-152; DE 106, p. 58, 77. Plaintiff did not dispute at trial that his personal logbook had discrepancies and errors and that there were discrepancies between his personal backup logbook, Pilot Experience Form, and Resume. DE 107, p. 21-22, 150-154; DE 53, p.5. Moreover, Fuller reviewed the logbooks provided by all the other air rescue pilots, **all of whom were military**. Fuller found that the

23

logbooks of the other military pilots were compliant and she found no discrepancy or error in their flight experience records. DE 107, p. 150. Thus, Plaintiff cannot base any inference of discrimination on either inconsistent explanations or disparate treatment. *Coffman v. Chugach Support Servs.*, 411 F.3d 1231, 1239 (11th Cir. 2005)(concluding that no reasonable jury could find plaintiff's military status was a motivating factor in employer's decision not to hire him as it hired both military and non-military personnel and plaintiff failed to show disparate treatment of service members compared to other employees with similar work records); *Loperena v. Scott,* 356 F. App'x 240, 242-43 (11th Cir. 2009); *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1015 (Fed. Cir. 2001); *see also Dominguez v. Miami-Dade Cnty.,* 416 F. App'x 884, 885 (11th Cir. 2011).

This leaves Plaintiff to establish that his long- prior military experience was a motivating factor as a result of "expressed hostility" by the **employer** towards members of the military. Plaintiff alleged that only Danielle Fuller made disparaging comments which he claims were based on his military status. However, the specific statements that Plaintiff attributed to Fuller do not constitute evidence of military bias. These alleged statements, attributed to Fuller, break down as follows:

    (1)    alleged statements that Plaintiff was "dumb" or "stupid" - these statements lacked any connection to his military service and were allegedly made in connection with Plaintiff failing EMT tests or

completing forms incorrectly. *Murphy v. City of Aventura,* 383 F. App'x 915, 918 (11th Cir. 2010);

(2)     alleged statements about Part 135 experience - it is undisputed that BSO's Air Rescue Division would function under Part 135 of FAA regulations and Part 135 experience was preferred in the posting for the position. Plaintiff lacked any Part 135 experience notwithstanding his seven years out of the military;

(3)     alleged statements that military pilots do not pay for flight training and that the military would not recognize Fuller's flight experience - these are statements of fact lacking the requisite evidence of military animus; and

(4)     alleged statement that Fuller knew better qualified people - has no connection to military, as Plaintiff "inferred" she meant pilots without military experience.

None of the specific statements Plaintiff attributed to Fuller were based on his military service and cannot form the basis for "expressed hostility" due to <u>military service</u>. DE 108, p. 178-180, 180-182. Plaintiff's conclusory testimony labeling these statements as "anti-military" is insufficient to satisfy Plaintiff's burden.

Even assuming arguendo that any of Fuller's statements constituted hostility based on Plaintiff's military status, Plaintiff cannot establish that Fuller was the decision maker as to his separation or that the decision maker, Chief Tammy Nugent, rubber-stamped the recommendation of Fuller under a "cat's paw" theory of liability to BSO. *Staub v. Proctor Hosp.,* 562 U.S. 411, 421; 131 S. Ct. 1186, 1193 (2011). The undisputed evidence presented at trial was that Tammy Nugent received a one

25

page memorandum from Fuller recommending Plaintiff's separation from employment during his probation for unverified flight experience and discrepancies in his flight hours. DE 96-2. The undisputed testimony is that Nugent then met jointly with Fuller <u>and military pilot and Director of Operations, Jesse Madrigal</u> to review the records - backup logbook, Resume and Pilot Experience Form that were the basis for the recommendation. DE 96-3; DE 98-2, DE 98-3; DE 107, p. 168-169; DE 106, p. 132-134, 147. Nugent testified that she reviewed the underlining documents and each entry of Fuller's findings with Madrigal and Fuller because Nugent wanted to satisfy herself that the basis was <u>justified</u> and substantiated and that she had consensus from Madrigal as a subject matter expert. DE 106, p. 132-134, 147. *Staub v. Proctor Hosp.,* 562 U.S. 411, 421; 131 S. Ct. 1186, 1193 (2011). In fact, the decision was entirely justified, as the basis for the recommendation was <u>undisputed to be true</u>. The findings were twofold:

1.  Plaintiff presented "no verifiable flight experience." True, as Plaintiff never provided his official logbooks he had stored in Virginia with endorsements and signatures to verify his flight experience. DE 106, p. 121-122, 142; DE 107, p. 21-22; DE 107, p. 148-149. DE 53, p. 4.

2.  "discrepancies between his application, personal electronic logbook and Pilot Experience Form." True, as Plaintiff acknowledges errors and discrepancies in his Resume, backup logbook and Pilot Experience Form. DE 107, p. 47; DE 107, p. 223-226; DE 53, p. 5.

26

Nugent testified that, having reviewed the documents and discrepancies with Fuller and Madrigal and confirming the basis was true and substantiated, she moved forward on the decision to separate Plaintiff during his probationary period. Thus, the undisputed evidence is that Nugent did not delegate fact-finding to Fuller. Instead, she fully reviewed the record with Madrigal to ensure he was in consensus and to ensure that the decision was entirely justified, apart from Fuller's recommendation.

More importantly, Plaintiff cannot dispute that the basis for the recommendation was true, as he had not verified his flight experience because he had never tendered his official logbooks (contrary to the other pilots) and he admitted to a myriad of discrepancies and errors between his electronic logbook, resume and his Pilot Experience Form. DE 53, p. 4-5. On this undisputed record, Plaintiff cannot establish any of the factors as set forth in *Coffman* on which he can base an inference of discrimination and he cannot satisfy his duty to establish that his military experience was a motivating factor for the decision to separate his employment.[3]

---

[3] At trial, Plaintiff sought to establish motivation by questioning Fuller as to why she did not give him extra time to comply or why she did not correct the errors and discrepancies in his flight hours. As the Court correctly noted, those claims are entirely irrelevant as the Sheriff can discharge an employee for good or bad reason even if they did a poor job deciding. The law protects against discrimination-period. DE 106, p. 73-74. Plaintiff's arguments confused the jury as to the legal requirements to establish his claim.

27

Under similar facts, in *Loperena v. Scott,* 2009 U.S. Dist. LEXIS 33544 at \*43-44 (M.D. Fla. Apr. 21, 2009), the Middle District found that plaintiff failed to present evidence that his past military service was a motivating factor in the employer's decision not to hire him. There, the employer knew about plaintiff's military status when it extended him a conditional offer of employment, the employer offered unrebutted testimony that it regularly hires applicants with military experience, and plaintiff offered no evidence of disparate treatment of military service members. On appeal, the Eleventh Circuit affirmed and explained that the Middle District had rejected plaintiff's USERRA claim because he could not show that "but for" his military service, he would have been hired, as the evidence showed that the employer routinely hired members of the military. *Loperena v. Scott,* 356 F. App'x 240, 242-43 (11th Cir. 2009).

Here, just as in *Loperena,* the undisputed facts establish that BSO routinely hires pilots with military experience as it hired three other Air Rescue Helicopter Pilots with military pilot experience into Plaintiff's same probationary training class. Additionally, Jesse Madrigal, who served as Director of Operations and was active military during his employment with BSO, participated with Tammy Nugent to review the documentation and he concurred that the reasons for the separation of Plaintiff were entirely justified. As such, the record is clear that BSO regularly hires

28

and employs military pilots and there was no disparate treatment of Plaintiff because of his military service. Moreover, the uncontroverted testimony establishes that there is no evidence of disparate treatment of military pilots with respect to their logbooks and flight records. Fuller, who was responsible for compiling and reviewing flight records of pilots in the Air Rescue program based on her job description, asked all pilots in Plaintiff's training class to complete a Pilot Experience Form and bring their logbook for review on January 10, 2019. DE 96-1; DE 107, p. 21-22. At the time, all four Air Rescue Helicopter Pilots in Plaintiff's training class were military pilots. Fuller reviewed the flight records for all the pilots, all military, and was fully satisfied with the records presented by all of the three others. Fuller did not find any discrepancies, errors or deficiencies as to the flight records of any of the other military pilots. Her findings were only as to Plaintiff, who admittedly had errors and discrepancies in his personal electronic logbook, Resume and Pilot Experience Form. Plaintiff was also the only one who failed to bring his official logbook.

Thus, Plaintiff failed to present any evidence whatsoever that the basis for Fuller's recommendation was fabricated or premised on military bias. Based on these undisputed facts, Plaintiff cannot show that his military service was a motivating factor in BSO's determination that he did not meet probationary standards of an Air Rescue Helicopter Pilot. *See also, Stimpson v. Tuscaloosa*, 186 F.3d 1328, 1331

29

(11th Cir. 1999)("the plaintiff must prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the decision to terminate the employee.") This Plaintiff cannot do here. Plaintiff's arguments or opinion as to whether the decision was fair, which is precisely and exclusively what Plaintiff sought to present, cannot replace the decision of BSO as a matter of law. *Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253,1265-6 (11th Cir. 2010)(quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000); *Duncan v. Alabama*, 734 F. App'x 637, 640 (11th Cir. 2018)(affirming judgment to employer in race discrimination case where undisputed evidence indicated that plaintiff's admitted misconduct was the basis justifying the decision to demote her, apart from any bias tainting the recommendation, and thus any alleged bias was not the proximate cause of her demotion). Here, Plaintiff cannot rebut the proffered reasons - period - where he admits the errors and discrepancies in the flight history he provided to BSO.

In conclusion, Plaintiff failed to present a sufficient evidentiary basis for a reasonable jury to find for him as to his *prima facie* case that his military service was a motivating factor in BSO's decision. The Order denying BSO's Renewed Motion for Judgment as a Matter of Law or, Alternatively, for New Trial should be reversed as Defendant is entitled to judgment as a matter of law.

30

**II.    BSO is entitled to judgment as a matter of law as Plaintiff failed to present sufficient evidence to warrant submission to the jury as to his claim for retaliation under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §4301, et seq. ("USERRA").**

In Count II, Plaintiff alleges that Defendant retaliated against him in violation of USERRA, 38 U.S.C. § 4311(b), by separating his employment for his alleged complaints about "anti-military" comments by Fuller. For an employee to state a claim under the anti-retaliation provision of USERRA, he must allege facts sufficient to demonstrate the following: "(1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Holt v. Hydraulic Hose of Hillsborough, LLC*, No. 8:18-CV-2082-T-33CPT, 2018 WL 7457682, at *2 (M.D. Fla. Nov. 9, 2018) (citation omitted). *See also Jones v. Dep't of Health & Human Servs.*, 703 F. App'x 977, 980 (Fed. Cir. 2017).

Section 4311(a) provides that a person who performed military service "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that . . . performance of service." Plaintiff's testimony failed to establish that he engaged in any action to enforce a protection afforded under USERRA. Plaintiff testified that he spoke to his EMT instructor, Jason Smith, on January 17, 2019 about Fuller.

31

Plaintiff did not testify to being aware of any write up or adverse recommendation against him by Fuller at that time. Based on Plaintiff's testimony, he did not complain about being denied employment or any other adverse job action protected under USERRA. As such, the undisputed record establishes that Plaintiff failed to show that he engaged in a protected activity in the first instance; and he, therefore, failed to meet his initial burden on his retaliation claim. Defendant was entitled to judgment as a matter of law. *Howard v. Walgreen Co.,* 605 F.3d 1239 (11th Cir 2010).

Even if Plaintiff could show that he engaged in a protected activity, he still failed to show that the protected activity was a motivating factor in BSO's decision that he did not meet probationary standards. To show causation, Plaintiff must "prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee." *Hanford v. GEO Grp., Inc.,* 345 F. App'x 399, 406 (11th Cir. 2009)(citing *Llampallas v. Mini-Circuits, Lab, Inc.,* 163 F.3d 1246, 1248 (11th Cir. 1998)); *see Ward v. UPS,* 580 F. App'x 735 (11th Cir. 2014)(applying Title VII causation principles to evaluate a USERRA retaliation claim). As discussed above, Plaintiff failed to establish causation.

32

Here, Plaintiff alleges causal connection based on alleged temporal proximity. Plaintiff claims that eleven (11) days after he complained to Smith on January 17th, he was called in and separated from employment on January 28th. DE 108, p. 200-201, 205-206. However, Plaintiff's argument ignores the timeline here. In a retaliation case, when an adverse employment action is recommended or contemplated before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation. It is well established that there is no temporal proximity or causation where the actions that ultimately lead to the challenged employment decision began prior to the alleged protected activity. *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). In *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006), in affirming dismissal of a USERRA retaliation claim, the court found that "temporal proximity" was insufficient and explained that "[t]he actions that led to [plaintiff's] probation and termination began *before* her alleged protected activity, belying the conclusion that a reasonable factfinder might find that [defendant's] activity was motivated by [plaintiff's] USERRA complaints."

Fuller asked the pilots to complete a Pilot Experience Form on January 2, 2019, and to bring their logbooks for review on January 10, 2019. DE 98-3; DE 107, p. 20-23; DE 106, p. 75-76. Based on her review of his records and lack thereof, Fuller

33

found that Plaintiff had unverified flight experience and discrepancies in the flight experience he submitted to BSO and made a written recommendation dated January 10, 2019, to Fire Rescue Command for his release from probationary employment. DE 96-2. Therefore, Plaintiff's January 17th discussion with Smith and subsequent discussion with Nugent are insufficient to support his retaliation claim where the actions leading to the challenged employment decision began *before* he made his complaint. *Dominguez v. Miami-Dade Cnty.,* 669 F.Supp. 2d 1340, 1352 (S.D. Fla. 2009); *see also Francis,* 452 F.3d at 309.

In sum, based on the undisputed record, Plaintiff cannot establish that he engaged in protected activity, but even if he could, his alleged complaints could not have been a motivating factor in the challenged employment decision because the actions leading to the decision started before his alleged complaint. As such, Plaintiff failed to meet his initial burden on his USERRA retaliation claim and Defendant is entitled to judgment in its favor.

Even if Plaintiff could make out his allegation of USERRA discrimination or retaliation *prima facie*, which he clearly cannot, Defendant is entitled to judgment in its favor. The record established, as Defendant consistently argued and supported with unrebutted evidence at trial, that BSO had legitimate non-discriminatory reasons, which alone justified the adverse action. DE 53, p. 10. As discussed above, Nugent

34

reviewed and confirmed that the basis for the recommendation was "entirely justified" (including by reviewing the documentation with none-other than the Director of Operations, who is himself a military pilot). *Staub*, 562 U.S. at 413, 421; *Coffman*, 411 F.3d at 1239; *see also 20 C.F.R. 1002.248* (employer prevails on USERRA discrimination claim where employer establishes legitimate nondiscriminatory reason for job action).

The Federal Aviation Administration ("FAA") is authorized to create regulations and minimum standards for practices, methods and procedure necessary for safety in air commerce. *Hughes v. Eleventh Judicial Circuit of Fla.,* 274 F. Supp. 1334, 1342 (S.D. Fla. 2003)(citing 49 U.S.C. §44701(a)(5)). "A key factor in flight safety is the qualifications and capacity of those at the helm of the flights, namely the pilots." *Id.* As Danielle Fuller testified, Part 135 prescribes rules governing air ambulance operations. 14 C.F.R. §135.1(a). BSO must keep, and make available for inspection by the Administrator, the record of each pilot used in operations, including the records of the pilot's experience. DE 107, p. 146-170; DE 98-1. Fuller's job description with BSO as Chief Pilot clearly specified that she was responsible for maintaining those flight records as required by the FAA. DE 98-3.

Here, BSO was starting an Air Rescue program in its EMS Division that would operate under Part 135 regulations. As specified in the Air Rescue Helicopter Pilot

35

job posting, pilots must comply with FAA regulations and provide flight data and logs as a job requirement. DE 98-1. Plaintiff was hired at BSO as a Helicopter Pilot in its Air Rescue program in November 2018 and subject to a one year <u>probationary period</u>, during which he could be terminated at any time for not meeting probationary standards. DE 96-4. While USERRA affords certain protections to service members, it certainly does not exempt those in the military from complying with the employer's rules and job requirements. *Corbin v. Southwest Airlines, Inc.,* 2018 U.S. Dist. LEXIS 171672 at\*43(S.D. Tex. Oct. 4, 2018).

BSO clearly established that it had legitimate, non-discriminatory reasons standing alone for its determination that Plaintiff did not meet probationary standards of the Air Rescue Helicopter Pilot position. As reviewed in detail above, there is no doubt that Plaintiff never produced his official logbooks which he consistently claimed he had in storage in Virginia. He knew that this was precisely what was being requested as he testified he told Fuller (and Miller before her) that those records were stored in Virginia. DE 108, p. 156-157; DE 107, p. 21-22. DE 53, p. 4-5. Plaintiff also admitted that there were errors and discrepancies in his personal backup logbook internally and as compared to his Resume and the Pilot Experience Form he himself completed. Chief Nugent did not merely rely on Fuller's recommendation to separate Plaintiff during his probationary period. She reviewed the documents themselves and

36

reviewed each alleged error and discrepancy with military pilot and Director of Operations Jesse Madrigal, and Chief Pilot Fuller at their meeting to review Plaintiff's records. Nugent based her decision on the independent review with and the concurrence of Jesse Madrigal, as Fuller's next level manager, to ensure that the grounds for separation were entirely justified apart from Fuller's recommendation. There is no evidence that Chief Nugent merely rubber-stamped Fuller or that her decision was based on any discriminatory animus toward Plaintiff.

Based on the foregoing, Defendant has met its burden of establishing that its decision was "entirely justified" and that the same determination concerning Plaintiff's probationary employment as an Air Rescue Helicopter Pilot was justified despite his former military service or any alleged protected activity.

Once, as here, the employer establishes that it had legitimate reasons standing alone for the employment decision, the Plaintiff can only prevail if he can establish that the employer's reason was pretext. "Under this analysis, courts must evaluate whether the plaintiff demonstrated such weakness, implausibilities, inconsistences, incoherencies or contradictions in the proffered reason so that a reasonable factfinder could conclude that it is unworthy of credit." *Landolfi v. City of Melbourne,* 515 F. App'x 832, 835 (11th Cir. 2013). Plaintiff here failed to present any evidence of

37

pretext, as the reason proffered by BSO is one that would motivate a reasonable employer.

**III.    Alternatively, BSO was entitled to a new trial as the verdict is clearly against the great weight of the evidence**

Alternatively, Defendant should have been granted a new trial under Rule 59, Fed. R. Civ. P., as the jury verdict stands contrary to the great weight of the evidence. A motion for a new trial is warranted where the verdict rendered by the jury was contrary to the great weight of the evidence. *Ard v. Southwest Forest Industries,* 849 F.2d 517, 520 (11th Cir. 1988) (citing *Watts v. Great Atlantic and Pacific Tea Co., Inc.* 842 F.2d 307, 310 (11th Cir. 1988). The granting of a new trial pursuant to Rule 59 is reviewed for abuse of discretion. *Ruckh v. Salus Rehab., LLC,* 963 F.3d 1089, 1099 (11th Cir. 2020) (citing *Aronowitz v. Health-Chem Corp.,* 513 F.3d 1229, 1242 (11th Cir. 2008). On this record, and given the lower court's own assessment that "this is a very weak case," the lower court abused its discretion and, at a minimum, a new trial is warranted.

When ruling on a motion for a new trial, the judge should determine "if in his opinion 'the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Hewitt v. B.F. Goodrich Co.,* 732 F.2d 1554, 1556 (11th Cir. 1984) (citations omitted). *Ins. Co. of N. Am. v. Valente,* 933 F.2d 921, 922-

39

23 (11th Cir. 1991)(the district court abused its discretion in not granting a new trial based on the weight of the evidence).

In considering the trial court's Order granting a motion for a new trial in an employment discrimination matter on the issue of whether the Plaintiff met his burden to establish discriminatory motive, the Eleventh Circuit held that, although the Plaintiff introduced some evidence, the evidence was so weak and attenuated that a new trial was warranted. *Ard v. Southwest Forest Industries,* 849 F.2d 517, 521 (11th Cir. 1988). The assessment of the evidence in *Ard* precisely mirrors the trial court's assessment of the evidence here, as the Court was compelled to conclude: "I think it's a very weak case." DE 106, p. 198.

40

## CONCLUSION

For the reasons stated herein, the Order of the District Court Denying Defendant's Renewed Motion for Judgment as a Matter of Law or, Alternatively, for New Trial should be reversed and judgment should be entered for Defendant BSO as a matter of law. Alternatively, BSO is entitled to a new trial as the jury verdict is against the great weight of the evidence resulting in a manifest injustice.

41

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the parties of the document exempted by FRAP 32(f), this document contains 10,582 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

s/ Carmen Rodriguez
Carmen Rodriguez

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2022, I electronically filed the foregoing document using the CM/ECF electronic filing system which will send a Notice of Docket Activity to all counsel of record.

s/ Carmen Rodriguez
Carmen Rodriguez